UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

BEVERLY BUNCHER                                    Civil Action No. 9:25-cv-80662

*Plaintiff,*

v.

HAMLET AT POINCIANA CONDOMINIUM ASSOCIATION, INC.,
and CENTURY MANAGEMENT CONSULTANTS, INC.

*Defendants.*

---

## DEFENDANTS, HAMLET AT POINCIANA CONDOMINIUM ASSOCIATION, INC. AND CENTURY MANAGEMENT CONSULTANTS, INC.S' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

COMES NOW Defendants, Hamlet at Poinciana Condominium Association, Inc. (hereinafter "Hamlet and Century sometimes collectively referred to as "Defendants") and Century Management Consultants, Inc. (hereinafter "Century") by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) hereby files their Motion to Dismiss Plaintiff's, Beverly Buncher's (hereinafter "Plaintiff" or "Buncher"), Complaint and in support thereof states as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

1.     This matter stems from a long buried three (3) plus year old dispute involving Plaintiff's request to have a dog as an 'emotional support animal' (hereinafter "ESA") at the Hamlet Condominium. *See* Compl. ¶ 1-56.

2.     Hamlet does not allow residents to maintain dogs as pets; to maintain a dog as a pet is a direct contravention of Hamlet's governing documents. *See* Compl. ¶ 17.

3.      On or around February, 2022, Buncher sought to purchase and closed upon 6698 10th Avenue, Apt. 318, Lake Worth, Florida 33467 (hereinafter the "Unit") located within the Hamlet condominium complex, where Plaintiff still to this day resides. *See* Compl. ¶ 2, 36.

4.      Buncher had already owned and possessed a poodle named "Hercules" at the time of the closing and Buncher moving into the Unit. Some three (3) years and five (5) months prior to the filing of Buncher's Complaint, Hamlet required Buncher to fill out certain paperwork regarding Buncher's request to qualify Hercules as an emotional support animal.[1]

5.      As involving "Hercules", back in January and February, 2022 Buncher voluntarily filled out all such emotional support animal paperwork presented to her by Hamlet and/or Century.

6.      Hercules was approved as a Buncher's emotional support animal and was eligible to reside with Buncher and did so until Hercules died on December 15, 2024. *See* Compl. ¶ 39.

7.      Then, Buncher, without prior notice to Hamlet nor approval from Hamlet, brought a new dog into the community, "Bella" for alleged emotional support. *See* Compl. ¶ 40.

8.      Following its emotional support animal procedures Hamlet requested Buncher contact Century to fill out the necessary paperwork for the purpose of approving "Bella" as Buncher's new emotional support animal. *See* Compl. ¶ 42.

9.      Buncher did not believe she had to seek approval for "Bella" because she was already approved for an emotional support animal as involving "Hercules". *See* Compl. ¶ 43.

10.     At no time did the Defendants require "Bella" be removed from the community nor have any restrictions associated with "Bellas" movements, i.e., walking, in the community. *See* Compl. 1-56.

---

[1] Buncher actually possessed a second emotional support animal which also resided in the Unit, named "Maxie". Plaintiff's Complaint fails to make reference to any allegations concerning "Maxie" other than admitting such second emotional support animal did reside with Plaintiff in the Unit. *See* Compl. ¶ 43.

11.     Buncher plainly admits that Hamlet also retracted a prior rule that emotional support animals' paws not touch Hamlet common grounds and Hamlet posted a sign informing residents that "all ESA animals are allowed to walk with their owners on property so long as they are on leash". *See* Compl. ¶ 52, footnote 2.

12.     On or around May 29, 2025, Buncher initiated this lawsuit against Defendants, and pursuant to the federal Fair Housing Act (hereinafter "FHA"), 42 U.S.C. §§ 3601 *et. seq.*, 42 U.S.C. § 3617 which attempts to assert four (4) causes of action against the Defendants, namely: Failure to Accommodate (Count I); Illegal Intimidation (Count II); Publishing a Statement indicating a preference that persons with disabilities not reside at the Hamlet (Count III); and Discriminating in the provision of services or facilities in connection with a dwelling (Count IV).[2]

13.     As discussed herein, Buncher has not and cannot successfully assert any actionable claims against Defendants. Thus, for the reasons illustrated below, the Plaintiff's Complaint against the Defendants should be dismissed in its entirety.

## MEMORANDUM OF LAW

### A.  Legal Standard Governing Motion to Dismiss.

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides that dismissal of a complaint is appropriate "if it is clear that no relief could be granted under any set of facts that could be provided consistent with the allegations." *Hirhson v. King & Spotting*, 47 U.S. 69, 73 (1984). "A motion to dismiss for failure to state a claim [generally] tests the sufficiency of the complaint." *Hazel v. Schl. Bd. of Dade County*, 7 F.Supp.2d 1349 (S.D. Fla. 1989). To survive a challenge by motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[2] Plaintiff appears to have attempted to assert a fifth Count, that Count is untitled and unclear as to the relief requested. *See* Compl. ¶ 95-97 but appears to be grounded in "injunctive relief".

(2009) (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). If a complaint simply parrots the elements of a cause of action and is supported by mere conclusory statements, it must be dismissed. *Id.* (citing *Twombly*, 550 U.S. at 555). Said differently, reviewing courts "are not bound to accept as true, legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

"In analyzing the sufficiency of the complaint, [the court should] limit [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). "Courts follow a two-prong approach when considering a motion to dismiss: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well- pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Greenberg v. Wells Fargo Bank NA*, 2015 WL 1647964 at *2 (M.D. Fla. 2015)(slip copy) (internal quote and citation omitted). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement." *Iqbal*, 556 U.S. at 679. However, to satisfy the *Iqbal* standard, "more than a sheer possibility" that the allegations are true is required. *Id.* Furthermore, while the pleading standards of Federal Rule of Civil Procedure 8 do not require detailed factual allegations, "it demands more than an unadorned accusation or mere conclusions. *Id.* (quoting, *Twombly*, 550 U.S. at 555).

Even under the liberal pleading requirements of Fed. R. Civ. P. 8(a), a plaintiff must set forth factual allegations, either direct or inferential, *respecting each material element necessary to sustain recovery* under some actionable legal theory; simply mimicking language of statutory cause

of action, without providing some factual support, is not sufficient to state a claim. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 240 (1st Cir. 2004) (citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)). *Emphasis* added.

**B. Plaintiff's Claims are time barred.**

To prove that a housing provider failed to reasonably accommodate a disability, a plaintiff must prove that: (1) she suffers from a disability within the meaning of FHA; (2) the defendants knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford "an equal opportunity to use and enjoy the dwelling;" (4) the accommodation is reasonable; and (5) the defendants refused to make the accommodation. *Dubois v. Ass'n of Apt. Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2005).

"The FHA does not demand that housing providers immediately grant all requests for accommodation." *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277, 1285-86 (11th Cir. 2014). A housing provider has "an opportunity to make a final decision…, which necessarily includes the ability to conduct a meaningful review to determine whether the FHA requires the requested accommodation." *Id.* at 1286. The "housing provider may request reliable disability-related information that (1) is necessary to verify that the person meets the Act's definition of disability…, (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation." *Overlook Mutual Homes, Inc. v. Spencer*, 415 Fed. Appx. 617, 621 (6th Cir. 2011), *quoting* Joint Statement of HUD and DOJ, "Reasonable Accommodations Under the Fair Housing Act" (May 14, 2004) ("Joint Statement")). When a disability is not obvious, a landlord is permitted to ask for additional information to confirm that the tenant is disabled or requires a specific accommodation. *See* U.S. Department of Housing and Urban Development, Fair Housing and Equal Opportunity Notice No. FHEO-2020-01, *Assessing a Person's*

*Request to Have an Animal as a Reasonable Accommodation Under the Fair Housing Act*, 9-10 (Jan. 28, 2020).

Buncher's claims are focused on and centered around the events leading up to the real estate closing as involving her Unit in January and part of February, 2022. Buncher is displeased with the paperwork she was asked to complete as involving her request to bring her ESA into Hamlet, by Plaintiff's own admission a "no-pet community". As previously stated, Buncher's first ESA, Hercules, was approved and lived with Buncher for close to two (2) years until his death. Yet, the gravamen of Buncher's lawsuit asks this Court to go back in time more than three (3) years and five (5) months and evaluate whether that paperwork involving her first ESA was somehow discriminatory in nature. The problem for Buncher is that her claims are seriously stale and barred by the applicable statute of limitations.

As involving claims for housing discrimination and attendant time limitations when bringing a civil action here is the applicable statute:

## 42 U.S.C. §3613. Enforcement by private persons

**(a)** Civil action
**(1)**
**(A)** An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than **2 years** after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach. [**Emphasis added**]

When interpreting limitations provisions, as always, "we begin by analyzing the statutory language." *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010). If the words of a statute are unambiguous, this first step of the interpretive inquiry is our last. *Connecticut Nat. Bank* v. *Germain*, 503 U.S. 249, 254 (1992). If "there are two plausible constructions of a statute of limitations," we generally "adopt the construction that starts the time limit running when the cause of

action . . . accrues" because "Congress legislates against the 'standard rule that the limitations period commences when the plaintiff has a complete and present cause of action.' " *Graham County Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, <u>545 U.S. 409</u>, 418–419 (2005) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund* v. *Ferbar Corp. of Cal.*, <u>522 U.S. 192</u>, 201 (1997)).

Here, the text of 42 U.S.C. §3613 clearly states that a claim for housing discrimination "may be brought . . . not later than **2 years** after the occurrence or the termination of an alleged discriminatory housing practice." That language unambiguously sets the date of the violation as the event that starts the two-year limitations period. At the time of the Fair Housing Act's enactment, the term "violation" referred to the "[a]ct or instance of violating, or state of being violated." Webster's New International Dictionary 2846 (2d ed. 1949) (Webster's Second). The term "occur" meant "to happen," and, as Webster's Second explains, "occur" described "that which is thought of as definitely taking place as an event." *Id.,* at 1684. Read together, these dictionary definitions confirm what is clear from the face of 42 U.S.C. §3613's text: The limitations period begins to run on the date the alleged violation actually happened. We must presume that Congress "says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank*, 503 U. S., at 254. The length of a limitations period "reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson* v. *Railway Express Agency, Inc.*, 421 U.S. 454, 463–464 (1975).

Again, Buncher's claims stem from her claim that Hamlet required certain ESA related paperwork be filled out prior to Buncher's real estate closing involving the Unit, with those events taking place in January and February, 2022. Buncher's lawsuit was filed in May, 2025, more than three (3) years and a few months after these events. Simply put, Buncher's claims are time barred.

### C. Claim for Failure to Reasonably Accommodate is Moot

Buncher's asserts a claim for Failure to Reasonably Accommodate on the factually incongruous grounds that Hamlet has refused to grant her request for reasonable accommodation to have a dog as an ESA; this claim must be dismissed based on the mootness doctrine. The FHA prohibits discriminating against a person on the basis of a "handicap," or a disability, by refusing to make reasonable accommodations when necessary to afford the person equal opportunity to use and enjoy a dwelling. *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277 (11th Cir. 2014).

The FHA defines "handicap" as "(1) a physical and mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such impairment. . ." 42 U.S.C. § 3602(h). Reasonable accommodation is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces. *See* U.S. Dept. of Justice and U.S. Housing and Urban Development, Joint Statement on Reasonable Accommodations ¶ (hereinafter "Joint Statement").

To successfully prevail in a failure-to-accommodate claim, plaintiff must prove that (1) they are disabled within the meaning of the FHA, (2) they requested a reasonable accommodation, (3) the requested accommodation was necessary to afford them an opportunity to use and enjoy their dwelling, and (4) the defendants refused to make the accommodation. *Bhogaita*, 765 F.3d 1277, *citing Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

"The FHA's reasonable accommodation provision requires only those accommodations that may be necessary . . . to afford equal opportunity to use and enjoy a dwelling." *Schwarz*, 544 F.3d at 1226 (internal quotation omitted). Once a provider knows of an individual's request for

accommodation, the provider has an opportunity to make a final decision . . . which necessarily includes the ability to conduct a meaningful review to determine whether the FHA requires the requested accommodation. *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175 (9th Cir. 2006) (internal citation omitted). The FHA does not demand that housing providers immediately grant all requests for accommodation. *Schwarz,* 544 F.3rd at 1219.

The United States Constitution limits the jurisdiction of federal courts to the consideration of 'cases and controversies.' U.S. Const. art. III § 3. The doctrine of mootness derives from the case-or-controversy limitation; an action that is moot cannot be characterized as an active case or controversy. *Troiano v. Supervisor of Elections*, 382 F.3d 1276 (11th Cir. 2004). A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief. *See Pacific Ins. Co. v. General Dev. Corp.*, 28 F.3d 1093, 1096 (11th Cir. 1994). A case may be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

Just for purposes of this motion to dismiss, Defendants do not dispute whether Buncher meets the definition of one with a disability which substantially limits major life activities, but instead postulates that Buncher's request for reasonable accommodation is moot since it has been met since on or around February, 2022. Further, Defendants seek to elucidate that there is no reasonable expectation that Buncher will, in the future, be prohibited from maintaining her ESA at Hamlet.

Here, Defendants did not willfully or intentionally deny Buncher's request, but sought information to conduct a meaningful review of Buncher's request for reasonable accommodation. Buncher only requested reasonable accommodation to facilitate the maintenance of a dog as an ESA *after* she brought her newly acquired <u>third</u> ESA into the community without first notifying

Defendants nor going through the procedures for approval. Buncher's attorney flatly refused on behalf of Buncher to have Buncher fill out the ESA application as involving her third dog Bella. *See Plaintiff's Complaint Exhibit 12.* Furthermore, the treating physician of Buncher provided a letter for Hamlet's review well after Buncher had already moved Bella into the Unit simply reiterating Buncher's need for an ESA but not mentioning nor identifying Bella at all in such letter dated January 27, 2025. *See Plaintiff's Complaint Exhibit 12.*

In Buncher's Physician's initial letter to Hamlet, an ESA was only recommended, with the physician noting "it is my recommendation that Beverly Buncher have an emotional support animal." Contrary to Buncher's assertion that reasonable accommodation was not provided, and despite Buncher and her counsel's abject refusal to comply with basic procedure by filling out the forms as involving "Bella", Buncher has been able to maintain her third dog, Bella, as her ESA. Defendants have made no requests to remove Buncher's ESA and Defendants have no future intentions of requesting that Buncher remove her ESA. Similar to *Jews for Jesus v. Hillsborough Cty. Aviation Auth*, where the court found the cause of action moot, this Court should find the claim for reasonable accommodation moot. 162 F.3d 627 (11th Cir. 1998). In *Jews for Jesus* the court found the Tampa International Airport would not likely return to its prior policy and would instead continue the policy it had consistently applied for three years. *Id.*

Here, Hamlet has permitted Buncher, without interference, to maintain her ESA for almost three (3) years prior to the filing of the instant action. Defendants have and will continue allowing Buncher to maintain the ESA on the property and will seek no further information as to an exception. Simply the fifth element necessary to establish that Hamlet, as the housing provider, failed to reasonably accommodate Buncher's alleged disability does not exist and will never exist. The fifth element being "the defendant refused to make the accommodation". By Buncher's own admission, "Hercules" lived with Buncher in the Unit from the moment she purchased the Unit

until Hercule's death in December, 2024.

When a plaintiff cannot satisfy the fifth element because the ESA lived with the plaintiffs during their entire stay at the housing provider's location, and there were no threats of eviction or removal of the animal, nor was the plaintiff fined or punished due to the ESA living at the property, a claim pursuant to 42 U.S.C. §3604(f) is immediately dismissible. *See, LaRosa, et. al. v. River Quarry Apartments, LLC,* Case 1118-CV-00384-BLW, United States District Court of Idaho; *See, Dubois v. Ass'n of Apt. Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2005).

In *Dubois,* Dubois and Prindable owned a unit in a residential condominium project and they began living with an English bulldog. The condominium bylaws forbade animals on the premises, "except that qualified individuals with disabilities" were allowed to have "assistance animals." In an effort to satisfy the bylaws, Dubois and Prindable submitted letters recommending that one or the other be allowed to keep the animal for "medical reasons." The condominium managers requested more information about the alleged conditions, but none of the doctors responded. Dubois and Prindable took the position that neither they nor their physicians were obligated to disclose further information, but they eventually submitted letters from a behavioral medicine specialist and two doctors stating that Prindable suffered from depression and that he would benefit from animal-assisted therapy and that separation from the dog would exacerbate the condition. The condominium association granted plaintiffs temporary permission to keep the dog, pending its review of the submissions concerning Prindable's condition. Before the condominium association took any further action to evict the dog, Dubois and Prindable sued. They alleged discrimination and retaliation in violation of the FHA, among other claims. The district court granted dismissal of the lawsuit in favor of the condominium association, and the Ninth Circuit affirmed, explaining that "[s]ince the Condominium Association never refused to make the requested accommodation, plaintiff's FHA claim necessarily failed." *Id.* at 1179 (footnote omitted,

citing *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 602 (4th Cir. 1997) ("[A] violation [of the FHA] occurs when the disabled resident is first denied a reasonable accommodation....")).

The Sixth Circuit addressed similar situation *Overlook Mutual Homes, Inc. v. Spencer*, 415 Fed. App'x 617, 620-21 (6th Cir. 2011) (unpublished decision). There, the court affirmed the district court's granting of a motion for judgment as a matter of law in favor of a housing corporation. The housing corporation did not formally grant the plaintiffs a temporary exemption to a "no pets" policy but nonetheless allowed plaintiffs to stay in the home with the animal while considering the accommodation. *See id.* ("True, Overlook never granted the Spencers a temporary exemption from the "no pets" policy, but the more important fact is that Scooby was allowed to stay with the family, and they were never required to leave their home or otherwise punished for Scooby's presence."). As in *Overlook*, this court concludes that although the LaRosas were not accorded a formal, temporary accommodation, they nonetheless enjoyed precisely that. Under *Dubois*, then, plaintiff's allegation that River Quarry refused an accommodation fails as a matter of law.

Accordingly, Plaintiff cannot maintain a cause of action for failure to accommodate. This action is moot because Defendants accommodated her request three (3) plus years ago as involving Buncher's first dog Hercules and second dog "Maxie" (both of whom died in December, 2024) and has continued to permit her latest ESA "Bella" to reside in the Unit since December, 2024. As such, Count I of the Complaint should be dismissed.

**D.  Claim for Illegal Intimidation Cannot be Established**

Much like Buncher's "accommodation claim," her claim for damages arising from purported illegal intimidation is meritless. In the context of a § 3617 claim, adverse action must be in the form of "coercion, "intimidation, threats, or interference." *See* 42 U.S.C. § 3617. Under Fla. Stat. § 760.37, "it is unlawful to coerce, intimidate, threaten, or interfere with any person in

the exercise of, or on account of her or his having exercised, or on account of her or his having aided or encouraged any other person in the exercise of any right granted under §§ 760.20-760.37. There is no requirement for a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001). The scope of 42 U.S.C.S. § 3617 is not limited to those who used some sort of potent force or duress, but extends to other actors who are in a position to directly disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus. *Mich. Prot. & Advocacy Serv. v. Babin*, 18 F.3d 337 (6th Cir. 1994).

Here, the allegations as set forth in the four (4) corners of the Complaint do not support a claim for illegal intimidation and at most shows a request to fill out applications, which Plaintiff admittedly complied with in the first instance back in 2022 (three plus years ago), but never did for her third ESA Bella. In fact, the Complaint underscores this very point.[3] Hamlet did not 'intimidate' Buncher but rather, in its correspondence merely cited to Florida law, specifically stating, "Florida Statute 413.08(9) states that it is a crime for a person to misrepresent that they have a 'service animal' when they do not have a 'service animal'", which is a true statement. *See* Compl. ¶ 76. Buncher incorrectly alleges the foregoing statement was intended to intimidate, humiliate and discourage. *See* Compl. ¶ 77. Buncher further claims informing her of the likelihood of fines and/or litigation was an intimidatory tactic. *See* Compl. ¶ 78.

To foreclose on Defendants' ability to generally cite to a statute when informing residents of the likely repercussions of their actions, if illegal in nature, would be an affront to good sense and would likely result in other legal action. Additionally, citing to existing law is standard in

---

[3] "Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Griffin Indus. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007), *citing Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812 (5th Cir. 1940)

many legal writings and affords the reader much needed knowledge of the likely legal effects of their behavior.

Accordingly, Buncher's cannot establish claims of illegal intimidation, and this claim must be dismissed forthwith.

### Count III – PUBLISHING A STATEMENT INDICATING A PREFERENCE THAT PERSONS WITH DISABILITIES NOT RESIDE AT HAMLET......

Plaintiff's Claim as involving "PUBLISHING A STATEMENT INDICATING A PREFERENCE THAT PERSONS WITH DISABILITIES NOT RESIDE AT HAMLET......" is defied by Plaintiff's very own exhibits and is immediately dismissible. Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control." *Griffin Indus. v. Irvin*, 496 F.3d 1189 (11th Cir. 2007), *citing Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812 (5th Cir. 1940). The entirety of Plaintiff's claim rests on the ridiculous premise that the following statement suggests Hamlet subscribes to the position that persons with disability who need assistance animals are not desirable. Here is the statement that Plaintiff claims undergirds this baseless assertion:

> "[Hamlet] advises that this Association has strict rule regarding animals and pets within the community, and the Association is required by law to enforce these rules."

Saying that Hamlet has rules regarding animals is a true non-discriminatory statement. By Plaintiff's own admission Hamlet is a "no pet community". *See* Compl. ¶ 17. Referencing the existence of *law* surrounding assistance animals is also a true non-discriminatory statement. And lastly, Hamlet referencing that it will enforce the strictures surrounding assistance animals is actually a mandatory obligation of Hamlet, not a discriminatory statement.

As much as Buncher may want this Court to entertain the plain language in this single statement to which Buncher relies on cannot be twisted, interpreted, nor viewed as discriminatory

in any way shape or manner.

### Count IV - Making a Dwelling Unavailable Based Upon Disability.[4]

Buncher has asserted a claim of making a dwelling unavailable based on a disability, contending Hamlet created a rule that emotional support animals' paws are not to touch Hamlet's community property. *See* Compl. ¶ 90. First, as to Buncher's first ESA, "Hercules", this claim is from three (3) plus years ago and is time barred. Secondly, by Buncher's own admission the rule has since been rescinded and has not been applied to Buncher's third dog "Bella" *See* Compl. ¶ 52, footnote 2. As shown above this claim cannot be established, as Buncher has had a dog in her residence without interference or intimidation from Hamlet for over two (2) plus years by Plaintiff's own admission in her Complaint.

This Court should find that Buncher's claim of making a dwelling unavailable is not tethered to the facts and should be dismissed.

### Untitled Count – "Injunctive Relief."

Buncher has asserted a yet unclear and untitled claim, which could be, interpreted as a claim for Injunctive Relief. Since this claim is untitled and subject to interpretation, Defendants will respond as if Plaintiff seeks injunctive relief.

To satisfy the standard for granting a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of prevailing on the merits; (2) that they will suffer irreparable injury unless the injunction issues; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Rogers v. Windmill Pointe Vill. Club Ass'n*, 967 F.2d 525 (11th Cir. 1992). A

---

[4] This Count is duplicative of Buncher's claim for reasonable accommodation. Reading the FHA, 42 U.S.C.S. § 3604(f)(1) and 42 U.S.C.S. § 3604(f)(3)(B) together, make clear that refusing to make reasonable accommodations is one specific type of conduct that violates the FHA's general prohibition against denying housing based on disability. *Falin v. Condo. Ass'n of La Mer Estates*, No. 11-61903-CIV, 2012 U.S. Dist. LEXIS 73453 (S.D. Fla. May 28, 2012)

plaintiff must clearly carry the burden of persuasion on all four elements to prevail on the motion for preliminary injunction. *Id. citing Sofarelli*, 931 F.2d 724.

### a. Reasonable accommodation requires case-by-case determination, not blanket injunctive relief.

Buncher requests the court, (1) restrain Hamlet from denying accommodations because they do not think a resident or potential resident has a disability, (2) restrain Hamlet from intimidating persons with disabilities and (3) seeking extraneous information regarding a disabled person's need for accommodation. *See* Compl. VII Prayer for Relief, p. 20-21.

Initially, Buncher cannot seek injunctive relief as to reasonable accommodations because, as noted above, "[w]hether a requested accommodation is required by law, is a 'highly fact-specific,' requiring case-by-case determination." *Loren*, 309 F.3d 1296. Under the FHA, the plaintiffs have the burden of proving that a proposed accommodation is reasonable. *Id. citing Groner*, 250 F.3d at 1045; *Bryant Woods Inn, Inc. v. Howard County, Md.*, 124 F.3d 597, 603-04 (4th Cir. 1997); *Elderhaven, Inc. v. City of Lubbock, Tex.*, 98 F.3d 175, 178 (5th Cir. 1996). Additionally as noted in *Bhogaita*, one element in a failure-to-accommodate claim is that the **plaintiff made a reasonable accommodation request**. 765 F.3d 1285 (emphasis added). In this regard, each individual who needs reasonable accommodation must make that request; broad injunctive relief is not applicable.

### b. Injunctive relief not available for past wrongs.

Further, injunctive relief is a prospective remedy. *McKinnon v. Talladega County*, 745 F.2d 1360 (11th Cir. 1984). Injunctive relief is a prospective remedy and does not compensate the claimant for alleged past wrongs. *Id.* at 1362. As in *McKinnon*, Buncher's apparent claim for injunctive relief is not applicable for past wrongs. *Id.*

As of this writing, Buncher maintains and has maintained a dog as an ESA at Hamlet for

over three (3) plus years. Injunctive relief is no way needed as a remedy.

Additionally, Buncher cannot show she will suffer irreparable injury unless an injunction is issued as she already maintains a dog as an ESA. To bring a claim for injunctive relief where there is no opposition to an act defeats the purpose of seeking injunctive relief. Since Buncher is unable to establish all, or frankly, any of the elements of a claim for injunctive relief, such a relief cannot be granted and should be dismissed.

WHEREFORE, Defendants, respectfully requests that this Honorable Court enter an Order granting Defendants' Motion to Dismiss Plaintiff's Complaint in its entirety in favor of both the Defendants with prejudice and award attorneys' fees and costs, and any other relief this Court deems just and proper.

## CERTIFICATE OF ADMISSION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this court set forth in Loca Rule 4(a).

Respectfully submitted,

By: _____
Scott J. Lee, Esq. (Florida Bar Number: 0454222)
Email: hoa@sjwlawgroup.com
Secondary Email: scott@sjwlawgroup.com
SJW Law Group, PLLC
12300 South Shore Blvd., Suite 202
Wellington, Florida 33414
Telephone: (561) 340-4555
Attorney for Defendant Hamlet at Poinciana Condominium Association, Inc and Century Management Consultants, Inc.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished on this 25th day of June 2025, via CM/ECF portal, Email, Facsimile or U.S. mail to: VENZA LAW, PLLC AND MARCY I. LAHART, PLLC., Counsel for Plaintiff Beverly Buncher, 12161 Mercado Drive, #227, Venice Beach, Florida 33409 and 861 S. 40th Street, Tacoma, Washington, 98418, dvenza@venzalawpllc.com and marcy@doglaw.com.

By: _____
Scott J. Lee, Esq. (Florida Bar Number: 0454222)
Email: hoa@sjwlawgroup.com
Secondary Email: scott@sjwlawgroup.com
SJW Law Group, PLLC
12300 South Shore Blvd., Suite 202
Wellington, Florida 33414
Telephone: (561) 340-4555
Attorney for Defendant Hamlet at Poinciana
Condominium Association, Inc.